**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

----------------------------------------------------------x
In re:                                          :         Chapter 7
                                                :
    Sabrina Vasquez,                          :         Case No.: 08-50831 (AHWS)
        Debtor.                               :
                                                :
----------------------------------------------------------x
Stewart Title Guaranty Company                  :
        Plaintiff,                            :
                                                :
v.                                              :         Adv. Proc. No.: 08-05098
                                                :
                                                :
Sabrina Vasquez,                                :
        Defendant.                            :
----------------------------------------------------------x

APPEARANCES:

Gregory T. Lattanzi, Esq.                       Attorney for Plaintiff
45 Court Street                                 Stewart Title Guaranty Company
New Haven, CT 06511

Joseph J. D'Agostino, Jr., Esq.                 Attorney for Defendant
1062 Barnes Road, Suite 304                     Sabrina Vasquez
Wallingford, CT 06492

**MEMORANDUM AND ORDER ON COMPLAINT OBJECTING TO
DISCHARGE OF DEBT UNDER 11 U.S.C. § 523(a)(2)(A)**

Alan H. W. Shiff, United States Bankruptcy Judge:

    Sabrina Vasquez ("debtor") commenced her chapter 7 bankruptcy case on

September 7, 2008.  On December 10, 2008, Stewart Title Guaranty Company

("Stewart"), filed this adversary proceeding, seeking a determination under 11 U.S.C. § 523(a)(2)(A) that the debt owed to it is nondischargeable.  For the reasons that follow, judgment shall enter in favor of Stewart.

## BACKGROUND

The following facts are undisputed.[1]  On April 21, 2005, Edwin D. Medina and the debtor acquired title to the property located at 100-102 Cowles Street, Bridgeport, Connecticut (the "Property").  (Compl. ¶ 2.)  On April 29, 2005, Medina executed a promissory note in the amount of $54,600 payable to Accredited Home Lenders, Inc. ("Accredited") and secured by a second mortgage on the Property.  (Compl. ¶ 3.)  On December 28, 2005, Stewart hired the debtor as a real estate paralegal.  (*See* Tr. 21-25 (explaining the debtor's job qualifications and duties).)  In April 2006, the debtor approached Albert Strazza, Stewart's Connecticut and Rhode Island manager and counsel (Tr. 20:14-16), informed him that the Property was in foreclosure, and asked Stewart to insure the title of the Property, so that it could be sold.  (Compl. ¶ 6.)  Stewart agreed and issued a title insurance policy.  (*See* Compl. ¶7.)  On May 12, 2006, the debtor and Medina sold the Property to Efrain Rodriguez for $350,000. (Compl. ¶ 8; Pl.'s Ex. A.)  The closing proceeds were deposited into an account held by their closing attorney, Douglas Seltzer.  (*See* Pl.'s Ex. C.)  Thereafter, $322,112.10 was

---

[1] At trial, the court granted the debtor's oral motion to amend paragraphs 1 though 9 of her *Answer*, such that now those paragraphs are deemed to be "admitted".  (Tr. 3:13-17, Feb. 17, 2010.)

transferred from Seltzer to Stewart.  (Tr. 29:22-23; Pl.'s Exs. C & F.)[2]  On May 15, 2006, Stewart paid $230,154.40 to the first mortgagee (Tr. 30:1-5; Pl. Ex. F) and $91,032.70 to the debtor (Pl.'s Exs. F & G).  At that time, Stewart did not know of the existence of a second mortgage on the Property.[3]

On August 2, 2006, Steven Clark, an employee of Accredited, demanded payment under the title insurance policy furnished by Stewart because Accredited's second mortgage had not been paid.  (Tr. 36:7-13.)  To satisfy that obligation, Stewart paid Accredited $64,000 in exchange for an Assignment of Mortgage.  (Pl.'s Ex. K.)  Stewart then commenced a civil action against the debtor and Medina in Connecticut state court, *Stewart Title Guaranty Co. v. Edwin D. Medina, et al.*, CV-06-5005597S, to recoup the money it paid Accredited.  (Pl.'s Ex. L.)  On  June 15, 2007, the parties to that action entered into a stipulated judgment in the amount of $64,000.  (Pl.'s Ex. L at 37:3-6.)

## DISCUSSION

The public policy promoted by bankruptcy allows "honest but unfortunate" debtors an opportunity to reorder their financial affairs and obtain a fresh start.  *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998).  That policy is accomplished by, *inter alia*, a

---

[2] There was a dispute as to what events caused Seltzer to transfer the funds to Stewart; however, there is no dispute that ultimately the funds were distributed by Stewart. (*See* Compl. ¶¶ 10, 11; Answer ¶¶ 10, 11.)  Moreover, at trial, no evidence was presented explaining why Selter wired to Stewart $322,112.10 not $350,000, the sale price.  Before wiring $91,032.70 to the debtor, Stewart withdrew $925.00 to pay costs associated with the title insurance policy.  (*See* Pl.'s Ex. F.)

[3] *See infra* at p. 5,6, & 8.

discharge of certain preexisting debts.  *See* 11 U.S.C. § 523(a).  The party objecting to the discharge of a debt bears the burden of proof by a preponderance of the evidence that the requirements of the relevant subsection, here § 523(a)(2)(A), have been satisfied.  *See* Fed. R. Bank. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Pierce*, 323 B.R. 21, 27 (Bankr. D. Conn. 2005).

In relevant part § 523(a) provides:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt —
>> (2) for money . . . to the extent obtained, by —
>>> (A) false pretenses, a false representation, or actual fraud . . . .

11 U.S.C. § 523(a)(2)(A) (2009).

Accordingly, to sustain a *prima facie*[4] case, Stewart must establish that :

1. the debtor made a false representation;
2. the debtor knew it was false at the time it was made;
3. the debtor made the representation with the intention and purpose of deceiving the creditor or inducing the creditor to act to the creditor's detriment;
4. the creditor relied on the representation to the creditor's detriment; and
5. the false representation was the proximate cause of the creditor's loss.

*E.g.*, Eurocrafters, Ltd. v. Vicedomine, 2005 U.S. Dist. LEXIS 10079, *15 (N.D.N.Y May 18, 2005)*; In re Roberti*, 183 B.R. 991, 1005 (Bankr. D. Conn. 1995).

---

[4] "*Prima facie* case has a clear meaning: evidence of an amount and quality sufficient to send a case to the trier of fact."  *SEC v. Unifund Sal*, 910 F.2d 1028, 1037 (2d Cir. 1990) (internal quotations omitted).

In assessing whether Stewart has established each of those elements, the court notes that the debtor declined to offer any witnesses or exhibits, relying on the cross-examination of Stewart's witnesses and her argument that Stewart failed to establish a *prima facie* case. (Tr. 53:9-13; Tr. 56:11-12; Tr. 58:19-22.) A review of the record in the context of that vacuum demonstrates that Stewart has satisfied each of the above elements.

   *1. The debtor made false representations.*

Prior to wiring any of the sale proceeds, Strazza asked the debtor for the mortgage payoff statement and was shown a HUD-1 settlement statement ("May 15th HUD") with only one payoff number, *i.e.*, $230,154.40 (Tr. 32:24-25; Tr. 33:1). On May 15, 2006, after calling Hunt Liebert, the trustee handing the foreclosure of the first mortgage, to verify the amount of the mortgage payoff, Stewart wired $230,154.40 to pay the mortgage (Tr. 30:1-5; Pl. Ex. F), leaving a balance of $91,032.70 (Tr. 31:21-23; Pl.'s Ex. F). Before Strazza distributed the balance to the debtor, he asked her, "[Are] there any more payoffs? [The debtor] said no" (Tr. 33:2). Then, he asked her a second time, "Is all this money yours? And [again the debtor] said, Yes" (Tr. 33:15). Both of these statements were false. That conclusion is buttressed by the debtor's admission through counsel at the close of evidence that there was a second mortgage on the Property which was not paid from the sale proceeds, resulting in her receiving "extra money". (*E.g.*, Tr. 58:5-6; Tr. 58:13; Tr. 61:15-16.) Moreover, the debtor had entered into a stipulated judgment in the state court foreclosure action in which she admitted

that she received "extra money" and agreed to a judgment in favor of Stewart for $64,000.  (*E.g.*, Pl.'s Ex. L at 2:16-17.)  Based on the foregoing, the court finds that the debtor's statements to Strazza, *i.e.*, that there were no more payoffs and that the entire $91,032.70 belonged to her, were false.

  2.  *The debtor knew that her false statements were false when she made them on May 15, 2006*

On May 12, 2006, the debtor signed a HUD-1 settlement statement (the "May 12th HUD"), which stated that she was obligated to pay two mortgages and afterwards the balance due to her would be $62,190.10.  (Pl.'s Ex. A.)  Yet, the May 15th HUD, which the debtor presented to Strazza (*see supra* at p. 5), showed only one mortgage payoff.  (*See also* Tr. 34:7-11 (explaining the differences between the May 15th HUD and the May 12th HUD).)  Moreover, on May 15th the debtor told Strazza that she was owed $91,032.70, an amount that is $28,842.60 greater than the net proceeds indicated on the May 12th HUD (*see supra* at p. 5-6).  Given the credible and undisputed evidence that the debtor was an experienced real estate paralegal, who routinely prepared HUD-1 settlement statements (Pl.'s Ex. D & E; Tr. 22:25; Tr. 23:1-3), there is no doubt that the debtor understood the glaring differences between the May 12th HUD and the May 15th HUD.  Indeed, the evidence clearly demonstrates that the debtor knew on May 15th that there were two mortgages to be paid off and that she was not entitled to $91,032.70.  (*See, e.g.*, Tr. 58:5-6.)  Thus, the court finds that her statements to Strazza were false and known to be so at the time they were made.

3. *The debtor made the representation with the intention and purpose of deceiving Stewart.*

"A debtor acts with fraudulent intent if he knows or believes that his statements are false at the time the statements are made." *Vidomlanski v. Gabor (In re Gabor)*, Adv. Proc. No. 06-01916, 2009 Bankr. LEXIS 3110, *16 (Bankr. S.D.N.Y. Oct. 8, 2009) (internal quotations omitted) (citing *Taub v. Morris (In re Morris)*, 252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000)).  Furthermore, an intent to deceive "may be established through circumstantial evidence," *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 129 (Bankr. S.D.N.Y. 2007) (citing *Hong Kong Deposit & Guar. Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990), and "may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor]," *Hong Kong Deposit & Guar. Ltd.*, 111 B.R. at 53 (finding an intent to deceive where the debtor's testimony was "inconsistent with the other evidence, was contradicted by prior sworn testimony, and was seriously lacking in credibility" (internal quotations omitted))).

The evidence adduced at trial established that the debtor orchestrated certain events to fraudulently obtain an additional $28,842.60 from the proceeds of the closing. To effectuate this plan, the debtor simultaneously told Seltzer that Stewart wanted to handle the payoff duties (Tr. 18:9-12) and told Stewart that Seltzer wanted Stewart to handle the payoff duties (Tr. 27:18-20).  After Stewart received the sale proceeds, the debtor gave it the May 15th HUD, showing only one payoff, and she told Stewart that there was only one payoff, and she was entitled to $91,032.70 (*see supra* at p. 5-6)*.*

The court's conclusion that the debtor intended to deceive Stewart is buttressed by Strazza's testimony that after learning that Accredited held a second mortgage on the Property and that its mortgage had not been paid, he confronted the debtor. She attempted to hide her deceit by claiming her false statements were all a "big mistake" and stating that she would deliver the requisite payoff letters that day. (Tr. 36:7-22.). But she never did, and she never returned to work. (Tr. 36:23-25; Tr. 37:1-25; Tr. 38:1-10.)

4. *The Stewart relied on the debtor's false representations to its detriment*.

The Supreme Court has held that a creditor bringing an action for the non-dischargeability of a particular debt under § 523(a)(2)(A) need only prove justifiable reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance."). Further, the Supreme Court observed that "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." *Id.* at 71.

The undisputed evidence supports a conclusion that Stewart relied on the debtor's misrepresentations and it was justified in doing so. The debtor was an experienced real estate paralegal and a "trusted employee" (Tr. 51:14) for approximately five months before the fraudulent statements were made. Despite that status, Strazza took the extra step of confirming with the debtor not once but twice that there was only one mortgage. (*See supra* at p. 5-6.)

    5. *The debtor's false representation was the proximate cause of the Stewart's loss.*

There can be no doubt that the debtor's deception caused Stewart to suffer a loss of $64,000. *See Union Bank v. Luthra (In re Luthra)*, 182 B.R. 88, 93-94 (E.D.N.Y. 1995) ("With reliance established, the Court also holds that, as a matter of law, the record sufficiently supports a conclusion that Union Bank's reliance was the proximate cause of its damage.")*.*

## CONCLUSION

For the foregoing reasons, Stewart has satisfied its burden under § 523(a)(2)(A). Accordingly, judgment shall enter in favor of Stewart, and IT IS SO ORDERED.

Dated this 13th day of April 2010 at Bridgeport, Connecticut.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge